We will take this interesting case under advisement, and we will hear the next case for today that's ordered, that's Royal Insurance v. KTA Tabor. What a strange name. May it please the Court, my name is Wendy Koch, and I represent Royal Insurance Company. Before I begin argument, there are two matters which I do wish to bring to the Court's attention. Before you begin argument, do you want to reserve time for rebuttal? Yes, thank you very much. I'm sorry, I forgot. I would like to reserve five minutes. Okay, thank you. Thank you. Two matters I want to bring to the Court's attention. The first matter is that there has been a decision, a granting of summary judgment in the underlying action. That is that KTA Tabor was granted summary judgment by the Supreme Court of the Bronx based on the fact that the Court found that there could not be a violation of the labor law, the cause of action on which it was sued. The estate of Campos has not appealed that decision. However, the Port Authority has perfected an appeal, so we are currently on appeal. No action has been taken, no briefs have been filed. Tell us again what the – I didn't know there was such a thing as the Supreme Court of the Bronx. The Bronx Supreme Court is a trial level. And it found what? And it found it granted summary judgment in favor of KTA Tabor, finding that there was no cause of action that could be stated against KTA Tabor. Either because it wasn't negligent or because – It was a violation of the labor law. That was the only real basis that the Court determined that the cause of action could ensue. Mr. Campos was a KTA Tabor employee. Pardon me? Mr. Campos was an employee. No, Mr. Campos was an employee of another contractor on the job. KTA Tabor was a consultant on the job to the Port Authority of New York. Your second point? My second point is that in discussing with counsel this morning, underlying counsel, attorneys' fees incurred to date have been $57,000. Although he assures me that based on the fact that the matter will be taken up on appeal, that they should reach the $75,000 or above amount. But I felt it necessary to bring that to the attention of the Court. You mean that goes to the diversity issue? That goes to the jurisdictional diversity issue. But wasn't the amount of controversy, at least at the beginning when it was filed, at least $75,000? Because we were talking about somebody's life? That is correct. It's a wrongful death action. So I'm not sure that you didn't automatically have, at least at that time, a good-faith belief that you met the required jurisdictional amount. It definitely was a good-faith belief, yes. In fact, the complaint alleged damages in excess of $1 billion. We lose jurisdiction when the amount gets cut down on the course. So I don't think that's an issue. That's not my jurisdictional problem. That's correct. How is this a final judgment under 1291? It's a summary judgment, quote, without prejudice, close quote. But the case has been dismissed. The underlying, the declaratory judgment action filed in the federal court has been dismissed as this course has— Wait a minute. You filed a motion for summary judgment. I filed a motion for summary judgment. And the court granted it without prejudice. Is that correct? No, the court denied my motion for summary judgment. Without prejudice. It denied my motion for summary judgment and stated that if additional facts came to light, that the case could be reinstated. But it actually dismissed the lawsuit. And on the basis of the final dismissal and the case in the federal court, it has been marked closed, satisfied, dismissed. There was no agreement between the parties. Dismissed with an opportunity, I guess, to come back? Why not? There is such a thing as a dismissal with an opportunity to come back. Well, no. That's what the judge said. Go ahead, Judge Einberg. Continue. It's weird. It was an opinion that stated that if facts should change, that the parties could come to the court, but the court dismissed the case on the merits. And the dockets indicate that the case was dismissed on the merits. But it was dismissed without prejudice. It was dismissed without prejudice, but this court has previously held that a dismissal without prejudice is a dismissal. Oh, no. And I refer the court to— No, no. Kapuscinski? Yeah, but most of our cases— Go ahead, Judge Einberg. Most of our cases, really, a dismissal without prejudice is not a final order for 1291. What you've got to do is go under 54B. That's right. And the trouble is there are express requirements that you have to comply with under 54B. And they weren't done here, such as the court needs to express a determination that there's no just reason for delay. I mean, it may sound like touching a vase, but that wasn't even—no one even came close to that vase here. That was not addressed in this action. You're correct, Your Honor. So if we're not under 54B, which is the way you might have gotten it, how is a summary judgment dismissed without prejudice a final order for 1291 purposes? A denial of summary judgment. A denial of summary judgment. Yes. I believe that when the case has been dismissed, marked dismissed on the dockets, that that satisfies the requirements. The clerk decides it? Well, no, the judge actually decided it, that the case was dismissed. No, I mean, in our court, for example, the clerk decides whether something's dismissed. I'm talking about the Eastern District of Pennsylvania. I mean, whatever we write, then the clerk interprets whether it's been dismissed or not dismissed. This case was interpreted as a dismissal. I understand that. And it is the position of Royal that this case was a final appealable order in the underlying case. Well, suppose something else has happened. What would now happen in the district court? And what would you now say— Royal actually would have to file a new action, would have to file a declaratory judgment action for a determination. I'm sure the opposing side would allege res judicata, that the issues have been adjudicated in a prior proceeding. And Royal would be left out in the cold. And it's for that reason that Royal brought this action, the appeal. I kept thinking—the court granted Greenwich's motion, did it not? The court granted Greenwich's motion for summary judgment. Without prejudice.  I thought it was granted Greenwich's motion. Your Honor, I do not know if they granted it without prejudice. That I cannot tell you. And expressly invited Royal and KTA to return in the event of, quote, changed circumstances, close quote. That is correct. But as to Royal's order, it denied Royal's motion for summary judgment. But you appealed— Based on the denial of Royal's motion. You would have to appeal the grant of Greenwich's motion, would you not? Is that what you appealed? I appealed the denial of— Your own? My own motion, because it dismissed the action. What did you do with regard to Greenwich's motion? Greenwich's motion was also appealed. Because the court had granted Greenwich's motion, yes. But it was on the basis that Royal's motion was a final— How do you get around the Borrelli case, which talks about, you know, it's an oldie but goodie from 76. That's one of my heroes on the court there. Websites. An order dismissing a complaint without prejudice ordinarily is neither final nor appealable. And we have kept to that throughout. Well, in Borrelli, hadn't the parties made their own side agreement? Are you asking us or are you telling us? In my research in the Borrelli court, the other parties had made a side agreement that indicated that they would agree to go back in front of the court should circumstances be changed. In this case, no such agreement has been made. But in our Scottsdale opinion in 2003, Judge Garth, there was no side agreement. He just said that when you dismiss without prejudice, health courts don't have jurisdiction under 1291. But in your Kempinski opinion, which was February 24, 2004, this court specifically stated it was an unpublished opinion and we provided a copy of it to the court. Well, if it's an unpublished opinion, it's not precedential. That's the court getting out of Dodge. Yeah. We really don't say people can't cite them. We just ignore them. For very good reasons, because they are not opinions of the court. They don't circulate. Go ahead. Can you give us a published opinion that is precedential? But it is an unpublished opinion. So how do you get around Scottsdale? How do you get around Borrelli? Under 1291, again, we all agree we don't fit under 54 page, unfortunately. Well, Your Honor, I still believe that I get around it just on the fact that it was a dismissal of the action. You want the district court opinion to be final. What kind of order do you suggest that we send down that would satisfy your belief? How could we aid you in making sure that the district court files a final order? Have you given any thought to that? Particularly with the change in circumstances, which we have just recently learned about, although I'm not sure that they actually do change the facts of the case, since it is an obligation to defend case, but we basically confine it to an obligation to defend case right now, assuming that we do prevail on appeal. But what would happen is for a remand to the district court to enter an order, either finding that reopening the case based on the change of circumstances or issuing a final appealable order with respect to the grant of summary judgment to Greenwich and the denial of summary judgment to Royalty. I can't figure out the practicality of what happened. The duty to defend is a broader duty than the duty to indemnify. Yes, it is, but it is not unlimited. It is still confined by the terms and conditions of the policy. And we actually have three competing insurance policies here. But two of the policies, one is specifically for professional services. The other is a general liability policy, which specifically excludes professional services. And there's no doubt among the parties that the contract at issue here was for professional services. It was titled that. It was for consultant services. But it also had some language in it that arguably could bring it into play. We found some language about traffic or things like that. Traffic control. Yeah, and that's how this accident happened in a way. He fell into the traffic lane and then was hit by the car. Arguably, his lawyer could say that you have a duty to defend. So I'm a little lost as to the practicality. If I had been the insurance company, would I not have felt that I should at least defend? There was a defense offered under a reservation of rights pending the determination of the declaratory judgment action. The contract itself was titled a consultant services contract, which by its very nature in terms was for professional services. If you look at the definition of consultant, KTA Taker was not there to actually put out cones. It was not there to drive the vehicle that was backing up. It was there purely in a supervisory capacity to perform supervisory and inspection services, services that are clearly excluded by the terms of the Royal Professional Liability Exclusion. Isn't there, I don't know, assuming that we have jurisdiction, and I'm certainly not sure that we have jurisdiction, shouldn't the district court have said they both have to go in and defend until at least more is known in the underlying case? Both policies did have a defense obligation, Your Honor. Both the Greenwich policy and the KTA Tater policy. The district court could have made that decision, but it did not make that decision. The district court clearly found that Greenwich did not have an obligation to defend and that Royal solely had the obligation to defend. And then if it turned out that Tater had some liability, they would just have to repay the cost, part of the cost or all of the cost of defense. Is that what usually happens? As an insurance company lawyer, you should know that. I do only represent insurance companies. In New Jersey, yes. And if the insurance company reserves its right to recover a portion of the counsel fees, but it must specifically do that. In New Jersey, however, the case law is that those uncovered portions are to be borne solely by the party. In Pennsylvania, the rule is that if any part, any claim is covered, that the insurance company has the obligation to defend all claims. But in this instance, at the very minimum, you have two competing policies, both with a defense obligation. I believe it is clear from the complaint, from the underlying complaint, that the nature of the allegations against KTA Tater were solely for professional services. Now, let me see if I understand you. I'm sorry. I didn't mean to. Finish that up. They were solely for consultant services, inspection and supervision, services clearly excluded by the policy, by the royal policy. And it's your position, I just want to get it on the final order, that because it said case dismissed, that was the end of the case and we have jurisdiction under 1291? The court ordered that Royal was obligated to defend and that Greenwich was not obligated to defend, but the case was dismissed and that Royal was to continue to defend the case, yes. And therefore, it is an appealable order. Well, what do we do with courts saying except that they have a right to come back if something happened? That's a strange sort of rule. But if we were to try to come back and say that something happened, we would be met with a res judicato argument. Well, no, I don't think so. Not if the court said that. Well, do you have any questions? Thank you very much. We'll get you back on the rebuttal which we granted you time for. Thank you. May it please the court, my name is Anthony Flynn. I represent the appellee and defendant below Greenwich Insurance Company. With me at council table is my colleague Jennifer Kinkas, with whom I was on brief for appellee in this case. And also at council table is George Jones, counsel for KTA Tater, the other appellee. And we have allocated our 15 minutes between us. Oh, you have? So he's also going to argue. He's going to argue. Three minutes for Mr. Greenwich. Okay. Thanks. There are two issues before the court and let me first turn to the motion to dismiss, which we have filed based on the fact that the order of the district court below was not a final decision. This court has quite recently addressed this issue in a reported decision last August in Wharton International versus A.E. Staley Manufacturing. A complex case, as I find all these 1291 cases are, the procedural history. But there, the court determined that an order dismissing under 12B-6 a party without prejudice was itself not appealable. First, because it did not dispose of other parties in the case and was not made final by a later order that did resolve the entire case. Because that later order was without prejudice to the party's right to come back to the court following, in this particular case, some alternative dispute resolution. Because the decision below, in this case, specifically contemplates that there may be future action based on the same controversy, it does not constitute a final order for purposes of appeal. That's what the court said in Wharton International and that is the circumstance here as well. How would you distinguish Beezer East from this case? Beezer East being that it was a consent judgment and the court said, well, it accomplished all that the parties sought. Therefore, in that particular case, we would decide to exercise jurisdiction. The court in the Wharton International case itself distinguished the Alcoa versus Beezer East decision, noting the unusual posture in that particular case. It was a consent order before trial. It laid out how the case was going to proceed and said that after trial, if any issues remain, there would be a mandatory alternative dispute resolution process. The court, under those circumstances, said that that order was final because it did not leave any recourse back to the court for the parties following trial and following this mandatory arbitration and mediation process. Therefore, unlike this case, where there is no bar to either the insured, K.T. Tater, or Royal Insurance to return to the court, the district court in this case, and seek further relief based upon what are now further developments in the underlying case, which, parenthetically, I'll say will seem to favor the Greenwich position, but that aside, because of that, the order is not a final decision. There is a controversy that may come back to the court on the merits of the decision. How? How would it, if you were the lawyer, how would it come back? They could refile the case in the district court. Pay the filing fee all over again? I suppose they would have to pay the filing fee all over again. So why has it not ended at the time that the court enters the order and then they have to do whatever it is they have to do? Do you want to take that one? Because the court's order specifically contemplates that there may be more work for that court to do with respect to that court. Well, there's always work for courts to do. I'm not sure. I mean, as a practical matter, you then have to go ahead and defend, right? Royal. Royal is providing a defense to K.T. Taylor in the underlying case. Yes. That it would be a separate action possibly filed to seek further relief from the court does not matter. This court in Wharton International addressed the precise issue. Any subsequent initiated litigation effectively will be part of the original action and controversy, albeit with a new caption and docket number. Consequently, there is potential for the district court to revisit the case in the event that in that case refiles its claims against one or more of the defendants, which may require the district court to adjudicate its claim or claims on the merits. Therefore, this court said the order of dismissal was not a final order. We would submit that the entry in the docket by the clerk was merely an administrative action by the clerk. And again, this court specifically addressed that particular issue in the Wharton International case where there had been a civil case terminated notation in the docket in the case below. This court said in order of reciting that no further action is contemplated and directing the clerk to mark the case closed does not become a final for purposes of appellate jurisdiction, merely by reason of the execution of that order and its entry on the docket. Therefore, because the order below was entered without prejudice both as to Royal's motion for summary judgment, which was denied, but also Greenwich's motion for summary judgment, which was granted, without prejudice to the rights of either Royal or the insured, to seek further relief based on developments in the underlying wrongful death action. And therefore, the order expressly contemplated that there may be a further proceeding on the merits. In the same controversy, the order is not final. And appellees, joined by a KTA in this motion, respectfully request that the motion to dismiss be granted. As a practical matter, after the district court issued its opinion, the insurance company, the other insurance company, didn't have any obligation to go ahead and do anything in the case, right? If you're referring to my client Greenwich, the answer is yes. And therefore, why isn't it practically final? You were just let out. Because as, well, now there is a decision that may be changed in the underlying case, and there are defense costs being incurred. We would anticipate there being a claim still against Greenwich by Royal for a share of those costs. Yeah, but I'm going back to the time that the district court issued its opinion. There was nothing left for it to do, wasn't there? I mean, there was nothing, the parties that were arguing before it. With respect to the duty to defend, was there anything left to do? Yeah. There was not. And so, I mean, there's a lot of theory that helps you, but as a practical matter, as Jeff Lover is asking, why did they have to go all the way through the case, defend, and then say later on, by the way, we think that was wrong. We now want to appeal that we had to defend. Well, I would say that the court's opinion on this subject contemplated that, let me stress, that the order below, with respect to both the duty to defend and the duty to identify, include this language without prejudice, and specifically said that if facts were developed below that would suggest that the plaintiff may be able to prove, not has proven, the plaintiff being the decedent below, that it was professional services that were involved, then Royal or KTA could come back to the court. Maybe we should issue an opinion that tells the district courts not to do that, that it's too confusing to the parties that they shouldn't do that, that that is discouraged. And the district judge who's sitting next to me waves her head yes. Absolutely. Because it certainly confuses matters for the parties. That could very well just be an afterthought by the district court. Why should it affect our jurisdiction? Let me add one thing about the duty to defend, if I may, that might bear on that, which is that the Greenwich policy is a so-called consultant's environmental liability policy, actually. It is an excess policy. There is a self-insured retention, $50,000 underlying it, meaning that it's not dollar-one coverage like the Royal policy, and that applies to both legal expense as well as indemnity, meaning that even if the court had determined otherwise that we did have the duty to defend, that duty would not yet have been triggered because the insured. Lawyers' expenses being what they are, it would have come into effect and the $50,000 would have been spent in no time at all. Judge Fuller, I would agree with you, not for the fact of the statement made earlier that only $57,000 in defense costs have been incurred so far. $57,000 is more than $50,000, the way I count. I agree, but this is now four years into the case. It's somewhat astonishing. But you said you aren't getting paid enough, that's all. Perhaps, but it's a very reputable firm, I will say. Turning, if I may, quickly to the merits of the appeal if the court reaches that, I just wish to say that the court, the cases that have been decided since briefing was completed with respect to the application of the professional services exclusion. And we provide them to the court. They're not discussed in the brief, but there's a more recent Fifth Circuit decision and a more recent decision in the Middle District, which is, of course, both only persuasive. But what they focus on with respect to the application of that exclusion is whether the claim relates to the specific business expertise of the insured in those cases. And in both cases they found that, yes, it was professional services that were being provided. Hotel services in one case. You're to the merits now. I apologize, I am on the merits, yes. I guess we can figure that out. I would be happy to answer further questions on the jurisdiction. No, no, go ahead. In this case, there is no allegation in the underlying complaint specific to KTA Tater. The only cause of action stated with respect to KTA Tater are together with the Port Authority of New York and New Jersey. And they merely relate to the maintenance of a safe workplace. They are not specific in any way. Isn't that exactly what didn't happen here? It wasn't a safe workplace. If it had been a safe workplace, Mr. Campos might be alive. I might agree with you, Your Honor, but that does not make it professional negligence as created that unsafe workplace. Well, I don't know. Under United National, you have two insurance policies here with excess coverage clauses. Isn't it more proper to hold it to specific policy here, your company's professional services contract will serve as the primary policy? That is, of course, the argument of the other side, but I disagree. I believe the specific versus general analysis is one that is not the current analysis of when you're dealing with overlapping coverages as you have here. The question is whether the two overlapping policies cover the same risk for the same period, and that is the case with respect to the umbrella policy issued by Royal and our professional liability policy. And the policies contain identical other insurance provisions. I think the law is clear under those circumstances that the two policies share, by equal shares, any liability or any exposure that is under those policies. So I believe the general versus specific, which is not the appropriate analysis with respect to these policies. And how would you then distinguish United National? National, I believe, was first-party coverage, for example. The general versus specific analysis really developed in first-party coverages, fire laws, for example, and whether one policy was more specific in describing the premises to be insured, for example. And I don't believe the analysis really carries into third-party liability, situations. The court has no further questions. Thank you. Thank you. We'll hear from counsel for KTA TATER. Somebody has to explain that name to me. Good morning, Your Honors. That's your first opportunity. Okay, that's your name. Yeah. My name is George Johns. I represent the insured KTA TATER. I only asked for three minutes today because I don't have too much to say. No, that's okay. But we may have a lot to ask you. All right. Any questions, please feel free to interrupt. We do. From the standpoint of the insured, the reasonable expectations that KTA TATER had when it obtained a policy for comprehensive general liability with Royal, I think really leads to a duty to defend on the part of Royal under the allegations as alleged in the Campos complaint. It seems to me that what you did was protect yourself. You tried to protect yourself all along the line. Correct, Your Honor. And all I don't understand about that is why you care which insurance company has the responsibility. Well, there's a $50,000 difference in the case of my client. Only in the Royal policy. Well, the Royal policy does not have a deductible. It pays first dollar for insurance. So you want Royal to be liable. I want Royal to defend me in this case because I have no obligation to pay first dollar for defense costs. In the case of the professional liability policy, I do. I have to pay the first $50,000. So it's an important distinction. And from my standpoint, and in terms of what was alleged in the complaint here, there's nothing in the complaint per se that tells me or anybody else reading that complaint that I'm being sued because I was professionally negligent. My client is essentially involved in large painting projects. Its expertise is with respect to coatings and with respect to safety insofar as it applies to environmental concerns arising out of spray painting of the George Washington Bridge, for instance. That's not what was involved in this accident. And just based upon the rudimentary facts that are known from the complaint, there's nothing that would say to anybody that this is a professional negligence situation. So based on that alone, I think the district court made the correct decision on the duty to defend. As to the coverage issue, it seems to me, and I realize the court is concerned about the jurisdictional aspects of this. That isn't so much my concern here. But as to the coverage issue, the duty to indemnify, the court essentially said, you know, go and try the case. If there's a decision in the trial court that or if the allegations change in the trial court such that the case becomes all about KTA's breach of a professional duty, then, you know, you can come back and we'll revisit this. I'm not so sure that it was proper for the district court to simply dismiss the case altogether as opposed to, I don't know, administratively dismiss or whatever it could do as an option. But I think that in terms of what was to develop down the road, the opportunity was created to have the parties come back if the case below turned into, the underlying case turned into a professional negligence case, which it never did. And as far as KTA Tater is concerned, the case is now over. Is it your position that there was a final order? Your Honor. I mean, what is your position on that issue? Well, we joined the position that Greenwich took in this case, namely that it was not a final order. Why do you, I don't understand, why is that to your advantage? Well, it isn't to my advantage, Your Honor. It is not? It's not to my advantage except to the extent that if, as things were to develop in the underlying liability case, it turned into a professional negligence case, I would want the opportunity to say there's coverage under this policy with Greenwich, and even if I have to pay the first $50,000, I'm covered for the next, you know, million. And at that point in time, Royal would be saying there's an exclusion here. I don't cover you for that next million. Only the underlying professional liability carrier has coverage. I don't understand why you wouldn't want us to hear the case and decide the merits of the liability, the coverage. Well, in one sense, I wouldn't want... You don't want us to go against you. Well, I wouldn't want Greenwich to have the ability to say the Third Circuit has now affirmed that there's no coverage here under the professional liability policy. Wouldn't you want to hear us? Because we might say there is coverage. Well, from the standpoint of where we are right now, where we were when this case found its way up here, you know, I'm content with the district court saying that the coverage exists under the Royal policy. That's $1.00 coverage for me. And based upon the allegations of the complaint... I see. The $50,000 is also his policy. I see. All right. You've explained that. Okay. I see that my red light is on, so if there's any other questions... I'm going to ask. I don't have any questions. No, then nobody has any questions. Thank you very much, Your Honor. Thank you for coming and explaining that. Thank you. Your Honor, to address your first question, the name K.T.A. Tater. Mr. Tater is the owner of the company, and his name is Kenneth something Tater. So it's Kenneth Tater. Thank you very much. It seemed like a very strange name. I found it interesting. I found it an unusual name. With respect to counsel's argument of reasonable expectations, I would submit that the court's decision in Canale indicates that K.T.A. Tater is not a party to argue that reasonable expectations would control this case, since reasonable expectations doctrine for the insured is generally applied in very limited circumstances in noncommercial cases. So therefore, K.T.A.'s argument that it just made that it had reasonable expectations that Royal would provide coverage under the CGL policy should not be a concern to this court. It looks like the question is brewing from Judge Emerick. No, it's not Judge Emerick's question. I've decided. I've decided for that. But the other issue, Your Honor, as the Eastern District most frequently does in these cases when there are coverage issues before it where the underlying case is not yet resolved, it puts a stay on the declaratory judgment action pending determination of the underlying case. That was not done in this instance. In this instance, a determination was made that there was an obligation to defend on one part. It's not the same court. I guess partly that was the problem, because under the merits case, and it was in New York, and the declaratory coverage case was in New Jersey. But frequently there's an issue where the underlying case is in the state courts of either Pennsylvania or New Jersey, and the declaratory judgment action is brought in federal court, and the Eastern District, as a general rule, will stay the declaratory judgment action pending the determination of the underlying case. Why didn't they give us the paper here? I don't know, Your Honor. It was a New Jersey court. Thank you very much. Thank you. We'll take the matter under advisement. Thank you for coming. Please rise. This court today is adjourned until Tuesday, August the 8th. I know we've been carrying my things. Oh, no, of course we all do. No, no. Over here. Would Judge Browning's law firm please come up and help her? Come on. I got it. I'll go first and take my things.